# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| KERRY LEIGH CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:10-cv-00105 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17. Plaintiff has filed a Reply. Docket No. 18

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on May 2, 2006, alleging that he had been disabled since January 28, 2005, due to back and spinal injury and depression. *See, e.g.*, Docket No. 11, Attachment ("TR"), TR 14, 56-57, 64, 115-18, 119-24. Plaintiff's applications were denied both initially (TR 56, 57, 60) and upon reconsideration (TR 58, 59, 67). Plaintiff subsequently requested (TR 73) and received (TR 82) a hearing. Plaintiff's hearing was conducted on May 1, 2009, by Administrative Law Judge ("ALJ") Robert L. Erwin. TR 27. Plaintiff and Vocational Expert ("VE"), Julian Nadolsky, appeared and testified. *Id.*

On September 11, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 11-26. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since January 28, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: history of degenerative disc disease; depressive disorder not otherwise specified; anxiety disorder not otherwise specified; and alcohol dependence. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 4, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as

        defined in 20 CFR 404.1567(b) and 416.967(b) [and] he is also precluded from work requiring more than occasional climbing, stooping, bending, crouching, crawling and kneeling; he could sit or stand for 6 hours out of a normal eight hour day but would require a sit/stand option so that he need not stand or walk for more than 30 minutes at a time without a brief respite or sit for more than 1 hour at a time without a brief respite during a normal eight hour work day. In addition, he would require work involving simple, lower level detailed tasks with normal supervision.

6. The claimant is able to perform his past relevant work as a candy packer (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 4, 1976 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills in not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2005[,] through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 16-26.

On October 9, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 113. On September 17, 2010, the Appeals Council issued a letter declining to review the

case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

4

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) discrediting Plaintiff's subjective complaints of pain; 2) rejecting part of the consultive examiner's opinion; and 3) failing to include information about Plaintiff's use of a cane in hypothetical questions to the VE. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Subjective Complaints of Pain**

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his complaints of pain. Docket No. 16. Specifically, Plaintiff argues that his hearing testimony was consistent with the statements he provided to his health care providers since the alleged onset of his disability. *Id.* Plaintiff also asserts that his impairments are the type that will produce the pain he alleges. *Id.* Plaintiff additionally maintains that the ALJ did not properly consider the nature, extent, and effect of his daily activities, and contends, therefore, that the ALJ's decision was not supported by substantial evidence. *Id.*

Defendant responds that the ALJ properly discredited Plaintiff's subjective complaints. Docket No. 17. Specifically, Defendant reiterates the ALJ's discussion regarding the discrepancies in Plaintiff's reports regarding illicit drug use and alcohol consumption. *Id.* Defendant also maintains that Plaintiff withheld information from Dr. Horace Watson, the consultive examining orthopedist, regarding his activities including working on a farm, doing tree work, and taking care of a violent relative. *Id.* Defendant additionally argues that Plaintiff's

ability to drive without difficulty undermines his disability claim. *Id.* Defendant argues that Plaintiff's activities are inconsistent with severe, disabling pain, and further argues that the ALJ's decision regarding Plaintiff's credibility is entitled to deference. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing a claimant's subjective complaints of pain, an ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other

9

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms, Plaintiff's allegations regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they are inconsistent with the determined RFC. TR 23-24. Specifically, the ALJ articulated that:

> The claimant's credibility is critical in this case. The record shows that he repeatedly prevaricates. The medical evidence documents that he told the consultative psychological examiner in December of 2006 he did not use illicit drugs; but told Peninsula he had used marijuana since he was 16 years old, smoked two to three joints a day and had last used marijuana December 14, 2006, the day of his appointment with Dr. Blazina. He also told Dr. Blazina he was not using alcohol; but he told Peninsula he was drinking 8 to 12 beers a day, with his last use being December 14, 2006. The claimant tested positive for marijuana in February of 2007. However, the claimant testified under oath at the hearing he used marijuana only after his grandfather died. As noted above, he had used marijuana since he was 16 and was still using marijuana in February of 2007. His grandfather was alive at least until August 2008 when the claimant reported caring for him.
>
> The undersigned notes that only two days after his consultative examination by Dr. Blazina he reported to the Emergency Room in Cookeville reporting suicidal thoughts, when he had no prior history of mental illness or treatment. The undersigned also notes

> that he did not keep the appointments at Plateau Mental Health and Bradford. This is not the behavior of someone suffering from severe depression with suicidal ideation.
>
> With respect to the claimant's allegations of disabling back pain, the [ALJ] does not find these credible. While the claimant may experience some back pain, the medical evidence documents it is not severe. For example, six weeks after surgery, the claimant reported to his surgeons he was doing fine but was using a cane and back brace at a consultative examination a month later. In December 2006, he was assessed at Peninsula as suffering from minor to moderate pain. He was taking no pain medication, suggesting his treating surgeons were not prescribing pain medication. He received no treatment from a pain management clinic, despite numerous referrals from his treating physician. This is not the behavior of someone suffering from totally disabling back pain.
>
> The claimant also never reported to the Administration he was working on a farm, doing "tree work", was capable of caring for a violent elderly relative, and that all this activity was possible due to the fact that his pain medications relieved his pain effectively. He also did not report this information to the consultative examining physician after the hearing. Further, it appears that this work is being done "off the books" as the claimant's certified earnings record does not reflect earnings in 2008 or 2009 when the claimant was working.

TR 23-24 (internal citation notations omitted), *citing* TR 125-26, 320, 357, 446.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 23-24. The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could

support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ found:

> In sum, it is clear that the claimant underwent major back surgery. However, the evidence does not support a finding that he is unable to work. On the contrary, the medical evidence documents his surgery had a good outcome and that while the claimant may experience some residual pain, he is not unable to work. He is able to care for himself, three minor children, work on his farm, raise a flock of chickens and interact appropriately with others. These findings are based on his own admissions, as well as the medical evidence of record.

TR 24.

As has been noted, this determination is within the ALJ's province. The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

**2. Weigh Accorded to the Consultative Examiner's Opinion**

Plaintiff contends that the ALJ erred in rejecting a portion of consultative examiner Dr. Watson's opinion. Docket No. 16. While Plaintiff acknowledges that the ALJ accorded great weight to the majority of Dr. Watson's opinion, he argues that the ALJ improperly rejected the portion of Dr. Watson's opinion that restricted Plaintiff to occasionally climbing ropes and stairs, and that prohibited him from climbing ladders, balancing, stooping, kneeling, crouching, crawling, operating a motor vehicle, and being exposed to unprotected heights or moving machinery. *Id.* Plaintiff argues that Dr. Watson's opinion that he would require a cane to ambulate and would not be able to walk a block on uneven surfaces supports the portions of his opinion rejected by the ALJ. *Id.*

Defendant responds that the ALJ properly evaluated Dr. Watson's opinion and accorded it appropriate weight. Docket No. 17. Specifically, Defendant argues that the ALJ correctly discounted parts of Dr. Watson's opinion because he determined that, at the time Dr. Watson rendered the opinion at issue, Dr. Watson was unaware of some of Plaintiff's activities (such as working on a farm, doing tree work, and caring for a relative) that would have affected those parts of his opinion. *Id.* Additionally, Defendant maintains that there is no evidence to demonstrate that Plaintiff always needed the assistance of a cane to ambulate or that Plaintiff could walk only ten feet without a cane, as Dr. Watson opined. *Id.* Finally, Defendant asserts

13

that the ALJ's resolution of conflicting findings is supported by substantial evidence. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Plaintiff is correct that the ALJ accorded great weight to the majority of Dr. Watson's opinion:

> Dr. Watson also supplied a Medical Source Statement dated June 2, 2009 which is essentially consistent with the residual functional capacity found above. Dr. Watson opined that the claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds; can sit, stand and walk for up to 1 hour at a time without interruption and can sit, stand, and walk a total of 6 hours total in an eight hour day. He further opined that the claimant could occasionally climb stairs and ramps; but should never climb ladders, balance, stoop, kneel, crouch or crawl; never be exposed to unprotected heights, moving mechanical parts or operate a motor vehicle; could occasionally be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, and vibrations. He assessed the claimant could perform activities like shopping, using public transportation, climbing a few steps at a reasonable pace, preparing a simple meal and feeding himself, caring for his personal hygiene and sorting, handling and using paper files. He did not think the claimant could travel without assistance or walk a block on rough or uneven surfaces. Great weight has been assigned to Dr. Watson's opinions.

TR 21 (internal citation notations omitted), *citing* TR 605-14.

Plaintiff is also correct that the ALJ did not accept Dr. Watson's opinion regarding Plaintiff's ability to occasionally climb ladders, balance stoop, kneel, crouch, or crawl. TR 17,

15

21. The ALJ properly explained his rationale for doing so, however, stating:

> The only difference between the residual functional capacity found above and Dr. Watson's assessments is whether the claimant is able to occasionally climb ladder[s], balance, stoop, kneel, crouch or crawl. The undersigned notes however that Dr. Watson's opinion is not inconsistent with the residual functional capacity found above, as the consultative examination was tainted by the claimant's lack of candor regarding his actual physical activities and abilities. The claimant did not report critical facts to Dr. Watson, e.g., that he took care of a violent relative, worked on his farm, and did "tree work". Dr. Watson therefore did not have the benefit of this additional information when crafting his opinions.

TR 21.

As can be seen, the ALJ considered Dr. Watson's findings in accordance with the requisite criteria, and reached a reasoned decision. Because Dr. Watson did not have complete and accurate information regarding Plaintiff's activities and abilities, the ALJ properly discounted the aforementioned portions of Dr. Watson's opinion.

The ALJ considered the evidence of record, reached a reasoned decision, and clearly articulated a basis for his assessment of Dr. Watson's opinion. The ALJ reasoning satisfies the requirements of the Regulations; the ALJ's determination, therefore, stands.

### 3. Vocational Expert Testimony

Plaintiff contends that ALJ erroneously failed to pose a hypothetical question to the VE regarding Plaintiff's need to use a cane when ambulating. Docket No. 16.

Defendant responds that Plaintiff's challenges to the hypothetical questions are moot. Docket No. 17. Specifically, Defendant maintains that if Plaintiff thought the hypothetical questions were under-inclusive regarding his cane or otherwise insufficient, then Plaintiff should have raised this issue during the hearing. *Id.*

Plaintiff's Reply reiterates the importance of the ALJ's including the need for a cane in the hypothetical questions to the VE.[2] Docket No. 18.

When posing hypothetical questions to a vocational expert, the ALJ need not include a description of all of the claimant's impairments. *Webb v. Commissioner*, 368 F.3d 629, 631-33 (6th Cir. 2004). Rather, the ALJ's hypothetical questions to the VE need only include the complaints and limitations that, based on substantial evidence, the ALJ finds credible. *Cline v. Shalala*, 96 F.3d 146, 150 (6th Cir. 1996); *Stanley v. Secretary*, 39 F.3d 115, 118-19 (6th Cir. 1994); *Blancha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1994).

The ALJ in the case at bar posed the following hypothetical questions to the VE:

> Q. Assume I were to find the claimant was limited to a range of light work, that he would have postural restrictions such that he didn't – shouldn't do any more than occasional climbing, stooping, bending, crouching, crawling or kneeling. He could stand or walk for six to eight hours out of a work day. Standing and walking he shouldn't do any more than 30 minutes at a time without being able to take a brief respite and sitting he could do for up to an hour at a time and with, again, just a brief respite. In regards to the pain that he experiences and its effect on his mental/emotional status, he would have the mental/emotional ability to do simple and lower level detailed tasks with normal supervision and his social functioning and adaptation would be adequate for this level of task. This is as found at page 3 of Exhibit 19F [TR 404]. Given his restrictions as so described, would there be any jobs in the regional or national economy he could do?
>
> A. There would be jobs he could do with those limitations. I believe he would be able to go back to the job of candy packer, assembly line worker that he had previously done. I believe those are the only jobs from among the – his prior

---

[2] Plaintiff's Reply addresses only his final statement of error; it does not contain arguments relating to his first two statements of error.

17

work that he could do, but he could also perform various other unskilled jobs and they would include jobs such as a parking lot attendant. I think he could work as an automobile self-serve service station attendant and he could perform factory based jobs, additional ones like the bearing ring assembler and oil filter inspector, a hardware assembler, a hand sander, a case packager. I believe those would be the kinds of light jobs that a person could perform with the limitations in that hypothetical and the claimant's background. These kinds of jobs in the local labor market within about a 75-mile radius of Cookeville, there's a total of about 1,800 of these types of jobs. In the national economy, there's close to two million of the same type of jobs.

Q. Assume I were to reduce the claimant's limitations to sedentary work, again, the same postural restrictions as in the first hypothetical, again, he shouldn't stand or walk more than 30 minutes at a time without being able to move his position for comfort and the same way for sitting, he shouldn't be required to sit for more than 30 minutes at a time without being able to move his position for comfort and he would have the same psychological and emotional abilities as indicated in the first hypothetical. Would there be any jobs in the regional or national economy he could do?

A. Yes, there would. I believe at the sedentary level he could do jobs such as a bottling line attendant, an electronics component assembler, a coil winder, a capacitor assembler, a packager of small parts or small products, a thermostat inspector. I believe these are examples of the kinds of jobs that a person could do at the sedentary level with those kinds limitations and they would all job [*sic*] that he would have to pretty much remain at a work station, but he could alternate between sitting and standing. In the same local – in the local labor market, same local labor market, there's a total of about 450 of these kinds of jobs. Nationwide, there's about 700,000 jobs he could do.

Q. Assume I were to add to these limitations in either of the first of the two hypotheticals a finding that because of the pain that he experiences and particularly the back problems that he has, that he would need unscheduled breaks which

18

      he would need to take for up to 30 minutes at a time during
      – throughout the work day, how would that affect the
      testimony?

    A.  It would preclude him from any of the jobs I testified to or
      from any type of work of an unskilled variety that eh's
      capable of.

TR 48-51.

  Plaintiff is correct that none of the hypothetical questions the ALJ posed to the VE inquire about specific limitations that result from using a cane. TR 47-51. As discussed above, however, the ALJ did not find Plaintiff's subjective testimony regarding this limitation credible because the record as a whole did not support the conclusion that Plaintiff requires a cane to ambulate effectively. Although Plaintiff cites Dr. Watson's findings to the contrary (Docket No. 16, *citing* TR 605-14), as explained above, the ALJ properly discounted Dr. Watson's findings in this regard. Because the ALJ's hypothetical questions accurately represented the impairments deemed credible, the ALJ properly relied on the VE's testimony to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform, including his past work as a candy packer. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's argument fails.

## IV. RECOMMENDATION

  For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

  Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge